# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| RODNEY BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-389 |
| | ) | |
| DONALD J. TRUMP, THE CITY OF ST. | ) | JURY TRIAL DEMANDED |
| LOUIS, MATTHEW BOETTIGHEIMER, | ) | |
| JOSEPH STEIGER, STEVEN KORTE, PHIL | ) | |
| HARDEN, and JOHN DOES 1-3, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Rodney Brown, by and through his undersigned counsel, for his complaint against defendants Donald J. Trump, the City of St. Louis, Matthew Boettigheimer, Joseph Steiger, Steven Korte, Phil Harden, and John Does 1-3, alleges as follows:

## INTRODUCTION

1.     This action is brought pursuant to 42 U.S.C. § 1983 and Missouri state law to redress the violation of Plaintiff Rodney Brown's constitutional rights.

2.     The claims in this lawsuit stem from Rodney Brown's arrest on March 11, 2016 at a campaign rally for then-presidential candidate Donald J. Trump, and his subsequent municipal prosecution. Rodney Brown seeks redress for damages and loss of liberty he suffered after he was arrested for nothing more than laughing. Defendants pursued a charge against Rodney despite having no probable cause to do so. Following a bench trial, Rodney was acquitted of the peace disturbance violation with which he was charged. He now seeks compensatory and punitive damages from Defendants for violation of his constitutional rights, as well as injunctive relief to

prevent being unlawfully seized, retaliated against, or maliciously prosecuted for exercising his constitutional rights in the future.

## PARTIES

3.      Plaintiff Rodney Brown is a Black resident of the City of St. Louis, Missouri, and is over eighteen years of age. Rodney is a community organizer, urban strategist with the St. Louis Action Counsel, and advocate for social and racial justice in the St. Louis area.

4.      Defendant Donald J. Trump ("Trump") is the former host of a reality television game show, a former part-owner of the Miss Universe pageant, an occasional featured guest on WWE's *Wrestlemania*, and the current President of the United States. At all times relevant to the events described herein, Defendant Trump was one of several candidates for President of the United States. Defendant Trump is sued in his individual capacity.

5.      Defendant City of St. Louis ("City") is a constitutional charter city created and organized pursuant to the Missouri Constitution and laws of the State of Missouri. The City oversees various agencies and departments, including but not limited to the St. Louis Metropolitan Police Department ("SLMPD"). The City has direct supervision and control of its employee-officers, including the SLMPD Defendants named herein.

6.      Defendant Matthew T. Boettigheimer is or was an employee of the City as a member of the SLMPD during the relevant time period and is identified in the relevant incident report as Rodney Brown's arresting officer. At all times relevant to the events described herein, Defendant Boettigheimer was acting under color of law and within the scope of his employment with the City and SLMPD. Defendant Boettigheimer is sued in his individual capacity.

7.      Defendant Joseph Steiger was an employee of the City as a member of the SLMPD during the relevant time period and wrote the incident report related to arrests made at the Peabody

Opera House on March 11, 2016. Upon information and belief, Defendant Steiger is currently an investigator with the St. Louis County prosecutor's office. At all times relevant to the events described herein, Defendant Steiger was acting under color of law and within the scope of his employment with the City and SLMPD. Defendant Steiger is sued in his individual capacity.

8.      Defendant Steven Korte is or was an employee of the City as a member of the SLMPD during the relevant time period and assisted with Rodney's arrest, or documenting Rodney's arrest, on March 11, 2016. At all times relevant to the events described herein, Defendant Korte was acting under color of law and within the scope of his employment with the City and SLMPD. Defendant Korte is sued in his individual capacity.

9.      Defendant Phil Harden is or was an employee of the City as a member of the SLMPD during the relevant time period and assisted with Rodney's arrest, or documenting Rodney's arrest, on March 11, 2016. At all times relevant to the events described herein, Defendant Harden was acting under color of law and within the scope of his employment with the City and SLMPD. Defendant Harden is sued in his individual capacity.

10.     Defendants John Does 1-3 (collectively, the "Doe Defendants") are or were employees of the City as members of the SLMPD during the relevant time period and assisted with Rodney's arrest or detention, or documenting Rodney's arrest or detention, on March 11, 2016. At all times relevant to the events described herein, these Doe Defendants were acting under color of law and within the scope of their employment with the City and SLMPD. The Doe Defendants are sued in their individual capacities.

11.     Defendants Boettigheimer, Steiger, Korte, Harden, and Doe Defendants are collectively referred to herein as the "SLMPD Defendants." The SLMPD Defendants and Trump

3

are collectively referred to herein as the "Individual Defendants." The Individual Defendants and the City are collectively referred to herein as the "Defendants."

## JURISDICTION AND VENUE

12.     Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of the Plaintiff's rights as secured by the First and Fourth Amendments to the United States Constitution, as incorporated against States and their municipal divisions through the Fourteenth Amendment. This Court therefore has jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff also brings parallel state claims under the Missouri Constitution, and requests supplemental jurisdiction of those claims pursuant to 28 U.S.C. § 1367.

13.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(e) because a substantial part of the events giving rise to the claims asserted in this action occurred in this judicial district. Divisional venue is proper in the Eastern Division because a substantial part of the events giving rise to Plaintiff's claims arose in the City of St. Louis. E.D.Mo. L.R. 2.07(A)(1), (B)(1).

## FACTS

*History of Retaliation and Assault Against Protesters at Trump Campaign Rallies*

14.     Freedom of speech is critical to sustaining a healthy democracy. But since Donald J. Trump started his campaign for President of the United States, the right to dissent has been under attack.

15.     Trump's campaign rallies were events at which Trump incited audiences with the expression of racist and misogynistic viewpoints. Along the campaign trail, a pattern of retaliation and violence against protesters quickly developed. On more than one occasion, peaceful dissenters at Trump rallies or campaign appearances were met with violence by Trump supporters—violence often incited or encouraged by Trump.

16.     For example, on November 21, 2015 in Birmingham, Alabama, a local activist interrupted a Trump rally with shouts of "Black lives matter!" In response, Trump shouted to the crowd: "Get him the hell out of here, will you, please? Get him out of here. Throw him out!"[1] In a video taken at the time, individuals in the crowd can be seen kicking and punching the activist. During an appearance on the Fox News Channel the following morning, Trump commented "Maybe he should have been roughed up, because it was absolutely disgusting what he was doing."[2]

17.     On February 1, 2016, at a campaign rally in Cedar Rapids, Iowa, Trump told supporters to "knock the crap out of" hecklers, promising to pay their legal fees if they did so.[3]

18.     Three weeks later at a campaign rally in Las Vegas, Trump said of a protester being escorted out: "I'd like to punch him in the face."[4]

19.     On March 4, 2016, at a campaign rally in Warren, Michigan, Trump complained about "political correctness" when handling protesters at his events. At one point when Trump was interrupted by a protest voice, Trump called out: "Get him out. Try not to hurt him. If you do, I'll defend you in court." He then asked the crowd, "Are Trump rallies the most fun? We're having a good time," before waxing nostalgic about an incident at a New Hampshire rally where a protester

---

[1] Johnson and Jordan, *Trump on rally protester: 'Maybe he should have been roughed up'*, WASHINGTON POST (Nov. 22, 2015), https://www.washingtonpost.com/news/post-politics/wp/2015/11/22/black-activist-punched-at-donald-trump-rally-in-birmingham/?utm_term=.f87d2286443b.

[2] *Id*.

[3] Daniel White, *Donald Trump Tells Crowd to 'Knock the Crap Out Of' Hecklers*, TIME (Feb. 1, 2016), http://time.com/4203094/donald-trump-hecklers/.

[4] Jeremy Diamond, *Donald Trump on protesters: 'I'd like to punch him in the face'*, CNN (Feb. 23, 2016), https://www.cnn.com/2016/02/23/politics/donald-trump-nevada-rally-punch/index.html.

started "swinging and punching" and audience members "took him out." It was, in Trump's opinion, "really amazing to watch."[5]

20.     Just two days before Trump made that comment, protesters were assaulted by Trump supporters at an event in Louisville, Kentucky.[6]

21.     At a rally on March 9, 2016 in Fayetteville, North Carolina, Trump goaded his supporters: "See, in the good old days this doesn't happen because they used to treat them very, very rough. And when they protested once, you know, they would not do it again so easily." At that same event, a Trump supporter punched a protester in the face as he was removed.[7]

22.     Two days later, on March 11, 2016, Trump called for the removal of Rodney Brown. SLMPD officers complied.

**'uge SLMPD Presence at the Trump Rally in St. Louis, and Rodney Brown's Arrest**

23.     Rodney Brown attended the Trump rally at the Peabody Opera House in St. Louis on March 11, 2016 (the "Rally"). He acquired a ticket to the Rally through EventBrite, and attended not as a supporter of the then-candidate, but as a concerned and engaged citizen and registered voter.

24.     A large number of SLMPD police officers were on duty at the Rally. Attached hereto as **Exhibit A** is a true and correct copy of a SLMPD Intra-Department Report and

---

[5] *Trump Says Fight at Rally 'Amazing to Watch'*, CBS NEW YORK/ASSOCIATED PRESS (Mar. 4, 2016), http://newyork.cbslocal.com/2016/03/04/trump-rally-fight/.

[6] Steve Bittenbender, *Protesters in Kentucky claim they were assaulted at Trump rally*, REUTERS (Mar. 3, 2016), https://www.reuters.com/article/us-usa-election-trump-protesters/protesters-in-kentucky-claim-they-were-assaulted-at-trump-rally-idUSMTZSAPEC33HI5U9Q.

[7] Bethonie Butler, *About that viral video of Donald Trump talking about 'the good old days'*, WASHINGTON POST (Oct. 14, 2016), https://www.washingtonpost.com/news/arts-and-entertainment/wp/2016/10/14/about-that-viral-video-of-donald-trump-talking-about-the-good-old-days/?utm_term=.995a207bf43d; David A. Graham, *The Lurking Menace of a Trump Rally*, THE ATLANTIC (Mar. 10, 2016), https://www.theatlantic.com/politics/archive/2016/03/donald-trump-fayetteville/473169/.

Correspondence Sheet dated March 10, 2016, which details Trump's itinerary, and the assignments of individual SLMPD officers and detectives on detail that day.

25.     In Defendant Steiger's own words, "[p]retty much the whole department was working that day…." One of the reasons SLMPD had such a large number of officers assigned to the event was because of issues at prior Trump campaign rallies—including those issues described above.

26.     Defendants Boettigheimer, Harden and Korte and the Doe Defendants were assigned to the Peabody Opera House on March 11, 2016. Defendant Harden was assigned to the mass arrest team and Defendant Korte was assigned to the site interior response squad. *See* Exhibit A.

27.     Defendant Steiger is not trained in civil disobedience and was not at the Peabody Opera House on March 11, 2016. He was assigned to the mass arrest booking team and was stationed at the SLMPD Central Patrol Division at 919 North Jefferson Avenue in St. Louis. He did not personally witness the events leading up to Rodney's arrest, but he did write the incident report describing those events.

28.     Rodney Brown was engaged in lawful and peaceful assembly at the Rally when he was arrested on March 11. Immediately prior to his arrest, Rodney was engaged in activities protected under the First Amendment, including peacefully attending the Rally and, at one point, laughing in response to a comment by Trump.

29.     In response to the laughter, Trump paused and then called from the podium: "Get him out of here! Get him out! Get him out of here!" The crowd responded with loud cheering, shouting, clapping, and "USA" chants.

30.     In compliance with Trump's commands, Defendants Boettigheimer and Korte physically escorted Rodney out of the Rally. As they led Rodney down the aisle, audience members jeered loudly.

31.     Later at the Rally, Trump complained that there used to be consequences for protesters, but "there are none anymore," and that protesters like Rodney Brown "are the people that are destroying our country."[8]

32.     Defendants Boettigheimer and Korte led Rodney into a booking area SLMPD had established in a hallway within the Peabody Opera House. Once there, Defendant Korte removed Rodney's personal property from his person and conducted a pat-down search. Upon information and belief, multiple unknown SLMPD officers were filming this entire encounter. At this time, after Rodney asked repeatedly what he was being arrested for, an SLMPD officer informed Rodney that he was under arrest for a general peace disturbance.

33.     Defendant Harden and the Doe Defendants assisted with the arrest of Rodney Brown and escorted Rodney to a police vehicle outside. An unknown SLMPD officer continued to film the encounter until Rodney was placed in the back of a police van.

34.     Rodney was photographed, processed and released after spending hours in custody of the SLMPD.

35.     Thirty other individuals were arrested at the Rally that day, all of whom, like Rodney Brown, were photographed at the time of their arrest and charged with general peace disturbance.

---

[8] Dara Lind, *The problem with violence at Trump rallies starts with Trump himself*, VOX (Mar. 13, 2016), https://www.vox.com/2016/3/11/11202540/trump-violent.

*Rodney Brown's Municipal Prosecution and Acquittal*

36.     On or about April 6, 2016, the City of St. Louis filed formal charges against Rodney Brown in the St. Louis Municipal Division, 22nd Judicial Circuit, Case No. D00643145-9. Based in whole or in part upon the information contained in the incident report prepared by Defendant Steiger, the City charged Rodney with peace disturbance in violation of Section 15.46.030 of the St. Louis City Municipal Ordinance Code.

37.     Section 15.46.030 of the St. Louis City Municipal Ordinance Code states:

> Any person who shall disturb the peace of others by noisy, riotous or disorderly conduct, or by violent, tumultuous, offensive or obstreperous conduct or carriage, or by loud and unusual noises, or by unseemly, profane, obscene, indecent, lewd or offensive language, calculated to provoke a breach of the peace, or by assaulting, striking or fighting another in any park, street, alley, highway, thoroughfare, public place or public resort within the City, or any person who, in the City, shall permit any such conduct in or upon any house or premises owned or possessed by him or under his management or control, so that others in the vicinity are disturbed thereby, shall be guilty of a misdemeanor.

38.     Although not codified in the ordinance itself, the Missouri Supreme Court's opinion in *City of St. Louis v. Tinker* places a limitation on verbal conduct impacted by the City's general peace disturbance ordinance, holding the scope of the ordinance is limited to "conduct which tends to excite immediate violence." 542 S.W.2d 512, 519 (Mo. banc 1976).[9]

_____

[9] *See also State v. Swoboda*, 658 S.W.2d 24, 25 (Mo. 1983) (finding that, under existing and long-standing Missouri law, ordinances such as the one at issue here are only constitutional and enforceable "to the extent that they prohibit only that speech which is likely to incite others to immediate violence") (citing *Tinker*, 542 S.W.2d 512, and *City of Kansas City v. Thorpe*, 499 S.W.2d 454 (Mo. 1973)); *State v. Carpenter*, 736 S.W.2d 406, 408 (Mo. 1987) (holding that Missouri statutes abridging speech are constitutional only to the extent they prevent "fighting words," which are "personally abusive, addressed in a face-to-face manner to a specific individual" and "have a direct tendency to cause an immediate violent response by a reasonable recipient") (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942)).

39.     Upon information and belief, Defendants are not properly trained or instructed on the *Tinker* "fighting words" limitation to the City's general peace disturbance ordinance. *See Tinker*, 542 S.W.2d at 519.

40.     The original charging instrument claimed that Rodney "unlawfully disturbe[d] the peace of others by noisy, riotous, or disorderly conduct, in a public place, or did then and there use indecent, lewd or offensive language, calculated to provoke a breach of the peace." *See* **Exhibit B** (Information). After undersigned counsel filed a motion for bill of particulars, the City narrowed its allegations to "noisy, riotous or disorderly conduct." *See* **Exhibit C** (Bill of Particulars). These allegations were narrowed a third time on the day of trial, over undersigned counsel's objections, to include the phrase "loud and unusual noises," and to add the general penalty clause, Section 1.12.010 of the St. Louis City Municipal Ordinance Code. *See* Exhibit D (September 18, 2017 Judgment at 1.

41.     The City pursued this charge against Rodney despite not having probable cause to do so. Upon information and belief, the City had a video at its disposal at the time it filed the charge against Rodney which showed that Rodney did not make any remarks calculated to provoke a breach of the peace. And the arresting officer, Defendant Boettigheimer, was not able to testify that Rodney Brown made any such remarks.

42.     The lack of probable cause did not matter because, upon information and belief, the City maintains a "no drop" prosecution policy against activists and protesters. That policy applies regardless of whether probable cause exists at the time of their arrest, the weight of the evidence against a defendant, or the constitutionally-protected nature of any alleged conduct on the day in question.

43.     Judge Newton McCoy conducted a bench trial on July 12, 2017. Defendants Boettigheimer and Steiger both testified for the City.

44.     On September 18, 2017, Judge McCoy entered a judgment of acquittal. A true and correct copy of the Judgment is attached hereto as **Exhibit D** (the "Judgment").

***SLMPD's Recent History of Biased Policing against Unwanted Speech***

45.     The City of St. Louis and its police department, SLMPD, have a history of biased police practices against unwanted speech, including speech challenging the status quo or calling for racial justice.

46.     On September 15, 2017, Missouri Circuit Judge Timothy Wilson acquitted former SLMPD Officer Jason Stockley of first-degree murder (and its lesser included homicide offenses) in the shooting death of Anthony Lamar Smith. In response, public protests began later that day in multiple locations across the City and surrounding areas. Over the next eighteen days, SLMPD arrested over 300 protesters or demonstrators.[10]

47.     In response to these protests—which called attention to what many felt was an unjust verdict influenced by institutional racism and pro-law enforcement bias—SLMPD employed aggressive crowd control techniques, including kittling and deploying various chemical agents.

48.     On one night in particular, SLMPD officers appropriated an activist chant, shouting at a group of protesters who had gathered in front of police headquarters downtown: "Whose streets? Our streets!"[11]

---

[10] Patrick Strickland, *St. Louis police arrest 307 protesters in 18 days*, AL JAZEERA (Oct. 5, 2017), https://www.aljazeera.com/news/2017/10/st-louis-police-arrest-307-protesters-18-days-171005104005733.html.

[11] *See, e.g.,* Cait Bladt, *St. Louis Protests: Everything You Should Know*, ROLLING STONE (Sept. 21, 2017), https://www.rollingstone.com/culture/news/st-louis-protests-everything-you-should-know-w504565; Susan Hogan, *St. Louis officers chant 'whose streets, our streets' while arresting protesters*,

49.     Shortly thereafter, four individuals filed a putative class action lawsuit against the City regarding the aggressive and retaliatory actions of the SLMPD during protests in the aftermath of the Stockley verdict. On November 15, 2017, federal District Court Judge Catherine Perry entered a preliminary injunctive order finding credible evidence that, among other things, the City has a custom or policy of retaliating against protesters: "Plaintiffs' evidence—both video and testimony—shows that officers have exercised their discretion in an arbitrary and retaliatory fashion to punish protesters for voicing criticism of police or recording police conduct." *Ahmad v. City of St. Louis, Missouri*, No. 4:17 CV 2455 CDP, 2017 WL 5478410, at *17 (E.D. Mo. Nov. 15, 2017).[12]

50.     The St. Louis region is no stranger to demonstrations in the face of police violence and racial injustice. The City's custom, policy or practice of retaliating against protesters who express disapproval of law enforcement officers predates the 2017 Stockley verdict.

51.     In 2014, individuals gathered throughout the City in response to the death of Michael Brown and the decision not to indict SLMPD Officer Darren Wilson. On the evening of November 24, 2014, SLMPD fired tear gas canisters at demonstrators gathered at or in MoKaBe's coffeehouse at Arsenal Street and Grand Avenue in the City of St. Louis—without first giving any announcement or dispersal order. SLMPD also fired tear gas in the alley behind MoKaBe's, so many individuals were trapped inside as the coffeehouse filled with tear gas.[13]

---

WASHINGTON POST (Sept. 18, 2017), https://www.washingtonpost.com/news/morning-mix/wp/2017/09/18/st-louis-officers-chant-whose-streets-our-streets-while-arresting-protesters-against-police-killing/?utm_term=.5d214b44cbbf.

[12] *See also, e.g.,* Radley Balko, *Federal judge says St. Louis police targeted protesters for retaliation*, WASHINGTON POST (Nov. 16, 2017), https://www.washingtonpost.com/news/the-watch/wp/2017/11/16/federal-judge-says-st-louis-police-department-targeted-protesters-for-retaliation/?utm_term=.51de3def9fbc.

[13] *See, e.g.,* Rachel Lippmann, *Settlement reached: Police must warn before use of tear gas or other chemical agents*, ST. LOUIS PUBLIC RADIO (Mar. 26, 2015),

52.     The following day, SLMPD again used chemical agents against protesters blocking part of a highway in the City.

53.     One year later, concerned citizens gathered to mourn and protest another shooting death of a young black man, Mansur Ball-Bey, who was killed by an SLMPD officer during the execution of a search warrant. People were gathered at the intersection of Walton Avenue and Page Boulevard when SLMPD officers again used chemical agents against protesters, without warning.[14]

54.     These are just a small sample of SLMPD's history of police practices biased against individuals who use their freedoms of speech and assembly to call for social justice and police reform. In the face of demonstrations throughout the St. Louis area, SLMPD took and continues to take advantage of broadly and vaguely worded ordinances—including the one under which Rodney Brown was prosecuted—which give officers broad discretion in determining whether and when to arrest someone engaged in First Amendment activity.

**CLAIMS FOR RELIEF**

**COUNT I**
**Unlawful Seizure/False Arrest pursuant to 42 U.S.C. § 1983**
**(against all Individual Defendants)**

55.     Plaintiff incorporates all preceding paragraphs as if fully set forth in this Count.

56.     As alleged above, Defendants Boettigheimer, Korte, Harden, and Doe Defendants arrested Rodney Brown for lawfully exercising his constitutional right of free speech and assembly, took custody of Rodney, and detained him hours—all after being told by Defendant

---

http://news.stlpublicradio.org/post/settlement-reached-police-must-warn-use-tear-gas-or-other-chemical-agents#stream/0.

[14] Robert Patrick, *ACLU Sues St. Louis police, claiming abuse of protesters in 2015*, ST. LOUIS POST-DISPATCH (Sept. 29, 2017), http://www.stltoday.com/news/local/crime-and-courts/aclu-sues-st-louis-police-claiming-abuse-of-protesters-in/article_a617ed5b-40fc-5496-99ac-6e4ca9cb3cb7.html.

Trump to "Get him out!" Defendant Steiger prepared an incident report which gave the illusion that Rodney Brown was part of a larger group of protesters who were arrested after him, and that there was probable cause to support the arrest when, in fact, there was not. At the time of Mr. Brown's arrest, all SLMPD Defendants were employees of the City.

57.     Defendants did not have probable cause to detain or arrest Rodney. Their seizure of Rodney was unreasonable and unlawful, and deprived Rodney of his right to be free from unreasonable seizure of his person in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and his right not to be retaliated against for exercising his First Amendment rights.

58.     On information and belief, Individual Defendants conspired to and acted together under color of state law, violated Plaintiff's civil rights and deprived him of the rights, privileges, and immunities secured by the Constitution and laws of the United States.

59.     Given Trump's position as a public figure, and command to SLMPD to remove Rodney from the Rally, he is considered a "state actor" for Section 1983 purposes. Trump received significant aid from state officials the day of the Rally in the form of safety and security provided by SLMPD, and was a willful participant in the detention and arrest of Rodney Brown. As alleged above, Trump told SLMPD to remove Rodney from the Peabody auditorium, as he did at prior campaign events which turned violent against protesters.

60.     As a direct result of the Defendants' conduct described above, Plaintiff suffered damages through the loss of liberty. Furthermore, he fears future unlawful seizures should he observe or participate in protest activity.

61.     Defendants' actions described herein were intentional, wanton, malicious, and exhibited a reckless indifference to Plaintiff's clearly established constitutional rights.

14

WHEREFORE, Plaintiff Rodney Brown requests this Court:

A.   Enter judgment in favor of Plaintiff and against the Defendants;

B.   Award compensatory and punitive damages against the Individual Defendants;

C.   Award Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

D.   Allow such other and further relief as the Court deems just and proper.

## COUNT II
### Malicious Prosecution pursuant to 42 U.S.C. § 1983
### (against all Individual Defendants)

62.   Plaintiff incorporates all preceding paragraphs as if fully set forth in this Count.

63.   Individual Defendants instigated a quasi-criminal charge against Plaintiff, with Defendants Boettigheimer and Steiger serving as the complaining witnesses identified in the charging information; Defendants Korte, Harden and Doe Defendants assisting with or documenting the arrest; and Defendant Trump commanding SLMPD officers to remove Rodney from the Peabody auditorium. *See* Exhibit B.

64.   Given Trump's position as a public figure, and command to SLMPD to remove Rodney from the Rally, he is considered a "state actor" for Section 1983 purposes. Trump received significant aid from state officials the day of the Rally in the form of safety and security provided by SLMPD, and was a willful participant in the detention and arrest of Rodney Brown. As alleged above, Trump told SLMPD to remove Rodney from the Peabody auditorium, as he did at prior campaign events which turned violent against protesters.

65.   Individual Defendants did so despite the fact that there was no probable cause that Rodney violated the City's general peace disturbance ordinance. Specifically, there was no evidence that he spoke any "fighting words," as constitutionally required for a speech-based peace

disturbance. *See Tinker*, 542 S.W.2d at 519. Nevertheless, Individual Defendants knowingly and recklessly instigated proceedings against Rodney Brown.

66.     To the extent that Individual Defendants claim they believed that the arrest and instigation of criminal charges against and prosecution of Rodney was supported by probable cause, Defendants' belief was objectively unreasonable, because there was no evidence from any witness that Rodney disturbed the peace through fighting words. Indeed, any such account is belied by video evidence in the Defendants' possession, custody, or control at the time the incident report was written and the charge filed.

67.     Despite this knowing lack of probable cause, Defendants would not dismiss the charges due, in whole or in part, to the City's aforementioned "no drop" prosecution policy against activists and protesters.

68.     The charge was eventually resolved in Rodney's favor through a judgment of acquittal. *See* Exhibit D.

69.     As a direct result of the Defendants' conduct described above, Plaintiff suffered damages through the loss of liberty.

70.     Defendants' actions described herein were intentional, wanton, malicious, and exhibited a reckless indifference to Plaintiff's clearly established constitutional rights.

WHEREFORE, Plaintiff Rodney Brown requests this Court:

A.  Enter judgment in favor of Plaintiff and against the Defendants;

B.  Award compensatory and punitive damages against the Individual Defendants;

C.  Award Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

D.  Allow such other and further relief as the Court deems just and proper.

<u>COUNT III</u>
### Conspiracy to Violate Plaintiff's Civil Rights pursuant to 42 U.S.C. § 1983
### (against all Individual Defendants)

71.     Plaintiff incorporates all preceding paragraphs as if fully set forth in this Count.

72.     Individual Defendants conspired and acted together in arresting, charging, and prosecuting Rodney without probable cause and in retaliation for Rodney's exercise of his clearly-established constitutional rights to free speech and lawful assembly.

73.     Each of the Individual Defendants engaged in multiple overt acts in furtherance of their conspiracy, including arresting and detaining Rodney without probable cause, preparing a misleading incident report which attempted to create the illusion of probable cause, and assisting the City in prosecuting Rodney for a general peace disturbance despite the lack of probable cause for the charge.

74.     As a direct and proximate result of the Individual Defendants' misconduct, Rodney suffered injuries as more fully alleged above, including but not limited to the loss of liberty.

75.     Individual Defendants' actions described herein were intentional, wanton, malicious, and exhibited a reckless indifference to Plaintiff's clearly established constitutional rights.

WHEREFORE, Plaintiff Rodney Brown requests this Court:

A.  Enter judgment in favor of Plaintiff and against the Defendants;

B.  Award compensatory and punitive damages against the Individual Defendants;

C.  Award Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

D.  Allow such other and further relief as the Court deems just and proper.

<u>COUNT IV</u>
### Retaliation for Exercise of First Amendment Rights in Violation of First and Fourteenth

17

### Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983
### (against all Individual Defendants)

76.     Plaintiff incorporates all preceding paragraphs as if fully set forth in this Count.

77.     On March 11, 2016, Plaintiff was engaged in protected First Amendment activity—namely, exercising his right to free speech and assembly by attending the Trump Rally and, at one point, laughing in response to a comment by the then-presidential candidate.

78.     As a result of this activity, and in retaliation for the activity, SLMPD Defendants arrested Rodney. Rodney was charged with a general peace disturbance, despite the fact that there was no probable cause for such a charge.

79.     Defendants lacked probable cause to arrest or prosecute Rodney.

80.     This arrest, detention, and prosecution is sufficiently adverse as to chill a person of ordinary firmness from engaging in such protected activity. Rodney had to take time off work to make multiple appearances in municipal court, retain the assistance of counsel, and attend trial before, 18 months after being arrested, he was finally acquitted.

81.     SLMPD Defendants' adverse actions in arresting, detaining, and prosecuting Rodney—at Trump's direction, or with his encouragement—were done for the improper purpose of deterring or discouraging Rodney and other activists or would-be activists from engaging in First Amendment activities.

82.     Upon information and belief, the Individual Defendants conspired to and acted together under color of state law and violated Rodney's civil rights as alleged above.

83.     Given Trump's position as a public figure, and command to SLMPD to remove Rodney from the Rally, he is considered a "state actor" for Section 1983 purposes. Trump received significant aid from state officials the day of the Rally in the form of safety and security provided by SLMPD, and was a willful participant in the detention and arrest of Rodney Brown. As alleged

above, Trump told SLMPD to remove Rodney from the Peabody auditorium, as he did at prior campaign events which turned violent against protesters.

84.     As a direct and proximate result of the Defendants' misconduct, Rodney suffered injuries as more fully alleged above, including but not limited to the loss of liberty. Furthermore, he fears future retaliation should he observe or participate in protest activity.

85.     Defendants' actions described herein were intentional, wanton, malicious, and exhibited a reckless indifference to Plaintiff's clearly established constitutional rights.

WHEREFORE, Plaintiff Rodney Brown requests this Court:

A.  Enter judgment in favor of Plaintiff and against the Defendants;

B.  Award compensatory and punitive damages against the Individual Defendants;

C.  Award Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

D.  Allow such other and further relief as the Court deems just and proper.

### COUNT V
### *Monell* Claim for Violations of First, Fourth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 (against the City of St. Louis)

86.     Plaintiff incorporates all preceding paragraphs as if fully set forth in this Count.

87.     The City of St. Louis maintains, condones, and is deliberately indifferent to unconstitutional policies, customs and practices of the SLMPD, including but not limited to: falsely arresting individuals for speech allegedly in violation of the City's general peace disturbance ordinance absent "fighting words" and without probable cause, in violation of the Fourth Amendment; enforcing the general peace disturbance ordinance and similar City ordinances in a manner which infringes on free expression and as an improper means for retaliating against protected expression, in violation of the First Amendment; and pursuing baseless municipal

prosecutions for alleged disturbance of the peace, without probable cause, with malice and for improper retaliatory purposes.

88.     Furthermore, the City maintains and condones a policy, practice and custom of refusing to drop ordinance prosecutions against activists or protesters, regardless of whether probable cause exists at the time of their arrest, the weight of the evidence against a defendant, or the constitutionally-protected nature of any alleged conduct on the day in question, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

89.     These customs and practices are so pervasive that they constitute *de facto* policies of the City of St. Louis.

90.     In addition, by its actions the City has ratified the unlawful conduct of the Individual Defendants herein.

91.     The aforementioned policies, customs and practices directly caused and were the moving force behind Rodney Brown's constitutional deprivations and resulting injuries alleged herein, including but not limited to the loss of liberty. Furthermore, he fears future unlawful seizures should he observe or participate in protest activity.

WHEREFORE, Plaintiff Rodney Brown requests this Court:

A.  Enter judgment in favor of Plaintiff and against the Defendant City of St. Louis;

B.  Issue a permanent injunction against the City of St. Louis;

C.  Award compensatory damages against the City;

D.  Award Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

E.  Allow such other and further relief as the Court deems just and proper.

## COUNT VI
### False Arrest pursuant to Missouri law
### (against all Individual Defendants)

92.     Plaintiff incorporates all preceding paragraphs as if fully set forth in this Count.

93.     As alleged above, Defendants Boettigheimer, Korte, Harden, and Doe Defendants arrested Rodney Brown for lawfully exercising his constitutional right of free speech and assembly, took custody of Rodney, and detained him for hours—all after being told by Defendant Trump to "Get him out!" Defendant Steiger prepared an incident report which gave the illusion that Rodney Brown was part of a larger group of protesters who were arrested after him, and that there was probable cause to support the arrest when, in fact, there was not. At the time of Mr. Brown's arrest, all SLMPD Defendants were employees of the City.

94.     Defendants did not have probable cause to detain or arrest Rodney. Their seizure of Rodney was unreasonable and unlawful, and deprived Rodney of his right to be free from unreasonable seizure of his person in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and his right not to be retaliated against for exercising his First Amendment rights.

95.     On information and belief, Defendants conspired to and acted together under color of state law, violated Plaintiff's civil rights and deprived him of the rights, privileges, and immunities secured by the Constitution and laws of the United States.

96.     As a direct result of the Defendants' conduct described above, Plaintiff suffered damages through the loss of liberty.

97.     Defendants' actions described herein were intentional, wanton, malicious, and exhibited a reckless indifference to Plaintiff's clearly established constitutional rights.

WHEREFORE, Plaintiff Rodney Brown requests this Court:

A.  Enter judgment in favor of Plaintiff and against the Defendants;

B.  Award compensatory and punitive damages against the Individual Defendants; and

C.  Allow such other and further relief as the Court deems just and proper.

**COUNT VII**
**Malicious Prosecution pursuant to Missouri law**
**(against all Individual Defendants)**

98.     Plaintiff incorporates all preceding paragraphs as if fully set forth in this Count.

99.     Individual Defendants instigated a quasi-criminal charge against Plaintiff, with Defendants Boettigheimer and Steiger serving as the complaining witnesses identified in the charging information; Defendants Korte, Harden and Doe Defendants assisting with or documenting the arrest; and Defendant Trump commanding SLMPD officers to remove Rodney from the Peabody auditorium. *See* Exhibit B.

100.    Individual Defendants did so despite the fact that there was no probable cause that Rodney violated the City's general peace disturbance ordinance. Specifically, there was no evidence that he spoke any "fighting words," as constitutionally required for a speech-based peace disturbance. *See Tinker*, 542 S.W.2d at 519. Nevertheless, Individual Defendants knowingly and recklessly instigated proceedings against Rodney Brown.

101.    To the extent that Individual Defendants claim they believed that the arrest and instigation of criminal charges against and prosecution of Rodney was supported by probable cause, Defendants' belief was objectively unreasonable, because there was no evidence from any witness that Rodney disturbed the peace through fighting words. Indeed, any such account is belied by video evidence in the Defendants' possession, custody, or control at the time the incident report was written and the charge filed.

102.    Despite this knowing lack of probable cause, Defendants would not dismiss the charges due, in whole or in part, to the City's aforementioned "no drop" prosecution policy against activists and protesters.

103.    The charge was eventually resolved in Rodney's favor through a judgment of acquittal. *See* Exhibit D.

104.    As a direct result of the Individual Defendants' conduct described above, Plaintiff suffered damages through the loss of liberty.

105.    Individual Defendants' actions described herein were intentional, wanton, malicious, and exhibited a reckless indifference to Plaintiff's clearly established constitutional rights.

WHEREFORE, Plaintiff Rodney Brown requests this Court:

A.  Enter judgment in favor of Plaintiff and against the Defendants;

B.  Award compensatory and punitive damages against the Individual Defendants; and

C.  Allow such other and further relief as the Court deems just and proper.

## COUNT VIII
**Retaliation for Exercise of Freedom of Speech and Right to Peaceable Assembly
in Violation of Article I, Sections 8 and 9 of the Missouri Constitution
(against all Individual Defendants)**

106.    Plaintiff incorporates all preceding paragraphs as if fully set forth in this Count.

107.    On March 11, 2016, Plaintiff was engaged in activity protected under Article I, Sections 8 and 9 of the Missouri Constitution—namely, exercising his right to free speech and assembly by attending the Trump Rally and, at one point, laughing in response to a comment by the then-presidential candidate.

108.    As a result of this activity, and in retaliation for the activity, SLMPD Defendants arrested Rodney. Rodney was charged with a general peace disturbance, despite the fact that there was no probable cause for such a charge.

109.    Defendants lacked probable cause to arrest or prosecute Rodney.

110.    This arrest, detention, and prosecution is sufficiently adverse as to chill a person of ordinary firmness from engaging in such protected activity. Rodney had to take time off work to make multiple appearances in municipal court, retain the assistance of counsel, and attend trial before, 18 months after being arrested, he was finally acquitted.

111.    SLMPD Defendants' adverse actions in arresting, detaining, and prosecuting Rodney—at Trump's direction, or with his encouragement—were done for the improper purpose of deterring or discouraging Rodney and other activists or would-be activists from engaging in First Amendment activities.

112.    Upon information and belief, the Individual Defendants conspired to and acted together under color of state law and violated Rodney's civil rights as alleged above.

113.    As a direct and proximate result of the Individual Defendants' misconduct, Rodney suffered injuries as more fully alleged above, including but not limited to the loss of liberty.

114.    Individual Defendants' actions described herein were intentional, wanton, malicious, and exhibited a reckless indifference to Plaintiff's clearly established constitutional rights.

WHEREFORE, Plaintiff Rodney Brown requests this Court:

A.  Enter judgment in favor of Plaintiff and against the Defendants;

B.  Award compensatory and punitive damages against the Individual Defendants; and

C.  Allow such other and further relief as the Court deems just and proper.

Date: March 8, 2018                    Respectfully submitted,

                                       By: /s/ Amy E. Breihan
                                       Amy Breihan, #65499MO
                                       RODERICK & SOLANGE
                                       MACARTHUR JUSTICE CENTER
                                       3115 South Grand Blvd., Suite 300
                                       St. Louis, MO 63118
                                       Phone: (314) 254-8540
                                       Fax: (314) 254-8547
                                       amy.breihan@macarthurjustice.org