IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RODNEY BROWN,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>DONALD J. TRUMP, *et al*.  )<br>)<br>Defendants.  )<br>) | Cause No. 4:18-CV-389 |

**DEFENDANT CITY OF ST. LOUIS' MOTION FOR PROTECTIVE ORDER
PURSUANT TO FED. R. CIV. P. 26(C)**

COMES NOW Defendant City of St. Louis ("City") and pursuant to Fed. R. Civ. P. 26(c), moves this Court for an entry of a protective order barring Plaintiff from adducing testimony on certain topics set forth in Plaintiff's Second Amended Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) Directed to the City (Exhibit A). In support, Defendant City states as follows:

**INTRODUCTION**

On March 11, 2016 Plaintiff Rodney Brown ("Plaintiff") attended a campaign rally for then-presidential candidate Donald J. Trump at the Peabody Opera House. During Trump's remarks, Plaintiff, who was seated near the front of the auditorium, made a loud, out-of-place laugh. Defendant Police Officer Matthew Boettigheimer ("Boettigheimer") heard the loud laugh and perceived it to be heckling. Boettigheimer then saw a heated argument between Plaintiff and at least two others within the crowd in the same area from which he had heard the laugh. A video recording of the incident depicts Plaintiff and at least two other individuals standing face to face and gesturing wildly. Boettigheimer believed Plaintiff to be the one causing the disturbance, and

1

in order to prevent the argument from escalating further or becoming physical, he, along with another officer, removed Plaintiff from the event and placed him under arrest for a general peace disturbance. The same day Plaintiff was released on a summons. On April 6, 2016, the City of St. Louis filed formal charges against Brown for peace disturbance under Section 15.46.030 of the St. Louis City Municipal Ordinance Code. Plaintiff filed the instant suit, asserting claims pursuant to section 1983 and alleging that four City police officers unlawfully arrested him and initiated a baseless prosecution against him in retaliation for exercising his First Amendment rights. Doc. 22. Plaintiff also asserts a municipal liability claim against the City. *Id.*

Brown's arrest and the events leading up to the arrest are captured on a high-quality video recording, and there is no serious dispute about the material facts in the moments prior to the arrest. Nevertheless, Plaintiff has served upon the City a 37-topic Rule 30(b)(6) corporate representative deposition notice, in which he seeks to, among other things, require the City to designate individuals to provide duplicative, unnecessary testimony describing events that are already well documented in the video recording. Exhibit A.

The City is in the process of complying with the Plaintiff's request for Rule 30(b)(6) deposition testimony, and to date, Defendant City has already produced four witnesses to testify regarding 11 topics. The City will produce at least four additional witnesses in the coming weeks to testify regarding and additional 12 topics. However, several topics are objectionable and clearly exceed the scope and limits of Rule 26(b). Defendant attempted to work with Plaintiff's counsel to reach a compromise concerning the remaining objectionable topics[1], however, the parties have been unable to reach an accord on several.

---

[1] Plaintiff has agreed to withdraw his request for testimony concerning Topic 31, which calls for testimony concerning the "merits of the allegations against the City" in 34 other lawsuits identified by the City in discovery responses. Plaintiff has also agreed to withdraw his request for testimony on Topic 34 to the extent it calls for

2

Defendants now move for a protective order pursuant to Rule 26(c) because the following topics exceed the scope and limits of Rule 26(b). First, Topic 7 is argumentative and impermissibly vague and ambiguous in that it calls for "policies, procedures, customs and directives regarding the arrest of persons engaged in First Amendment activity." Topics 27, 28, and 29 call for information concerning the City Police Department's response to incidents of civil unrest that bear no similarity whatsoever to the circumstances of Plaintiff's arrest. These topics therefore call for information that is irrelevant and immaterial, and the burden and expense of the discovery outweighs its likely benefits. Further, Topics 10, 11, 12, 13 call for legal conclusions because these requests require the City to designate an individual to provide testimony describing how its training and policies comport with the holding in the Missouri Supreme Court case *City of St. Louis v. Tinker*, 542 S.W.2d 512, 519 (Mo. banc 1976). Finally, Topic 35 is burdensome and requires undue expense in that it calls for duplicative testimony concerning the "facts" of Plaintiff's arrest, an event which is depicted in a high-quality video recording. Topic 35 is further objectionable because it calls for legal conclusions.

For the forgoing reasons, this Court should enter an order barring Plaintiff from adducing testimony on the abovementioned topics because they exceed the scope and limits of discovery as set forth in Rule 26(b).

**LEGAL STANDARD**

A court can enter a protective order upon a request of a party or a person from whom discovery is sought to protect a person from annoyance, oppression, or undue burden or expense. Rule 26(c). Among the types of protective orders that a court can enter are those holding that the discovery not be had or that discovery may be had only on specified terms and conditions or

---

testimony concerning the factual basis for the City's denial of allegations in paragraphs 27, 38, 39, 41 of the First Amended Complaint.

3

prescribing a discovery method other than the one selected by the party seeking discovery. Rule 26(c)(1)(A)-(C).

## ARGUMENT

**Topic 7**. This topic calls for the "City and SLMPD policies, procedures, customs and directives regarding the arrest of persons engaged in First Amendment activity." Exhibit A. This request is vague and ambiguous and insufficiently definite because the mere act of protesting or participating in First Amendment-protected activity does not provide probable cause for an officer to make an arrest. Topic 7 therefore requires the City and its designee to speculate about the myriad circumstances and scenarios in which an individual who is engaged in a First Amendment-protected activity could also commit an offense leading to his or her arrest. This topic is also argumentative to the extent it suggests that the City arrests individuals *because* they are engaging in First Amendment-protected activity.

To date, the City has already produced a designee to testify regarding Police Department Special Order 1-06, which is the department's policy concerning citizens' right to observe and video record police officers in the course of their duties. See Ex. A, Topics 8 and 9. The designee also testified regarding the training officers receive in the Police Academy with regard to citizens' First Amendment rights. However, Defendant does not have a policy regarding the arrest of persons "engaged in First Amendment activity" because City police officers are not permitted to, nor do they, arrest people for merely exercising their First Amendment rights. The policies of the City Police Department provide for arrests when officers have probable cause that a state or local law has been violated. Thus, pursuant to the policies of the City, any arrest made of an individual who was participating in First Amendment-protected activity would occur only if the officer had probable cause to believe the individual had also violated a law.

4

Given that, it is clear that Topic 7 requires the City – via its designee -- to speculate about hypothetical circumstances and events and the various state and local laws that a person might violate, leading to his or her arrest. As Topic 7 is currently written, the designee would have to be prepared to testify regarding a long list of Special Orders and identify which policies would apply in any given factual scenario.

Although Rule 30(b)(6) permits a party to name as a deponent a governmental agency, the notice of deposition "must describe with *reasonable particularity* the matters for examination." (emphasis added). Here, Topic 7 lacks reasonable particularity because "the information sought would make it nearly impossible for a party to designate and fully prepare a corporate representative with knowledge regarding the topics as noticed." *Catholic Mut. Relief Soc'y of Am. v. Arrowood Indem. Co.*, 2019 U.S. Dist. LEXIS 173877 at *8-*9 (D. Minn. Jan. 9 2019) citing *E3 Biofuels, LLC v. Biothane, LLC*, No. 8:11CV44, 2013 U.S. Dist. LEXIS 115521, 2013 WL 4400506, at *2 (D. Neb. Aug. 15, 2013).

This Court should find that Topic 7 lacks reasonable particularity because it would be nearly impossible for the City to prepare a corporate representative who could testify regarding Topic 7 as it is currently written. This Court should find that Topic 7 does not comport with Rule 30(b)(6) because it is overly broad and ambiguous and not sufficiently particularized in that it does not put the designee on sufficient notice as to the testimony he or she will be asked to provide.

**Topics 10-13**. Topics 10, 11, 12 and 13 call for testimony concerning the City's "compliance" with the case *City of St. Louis v. Tinker*, 542 S.W.2d 512, 519 (Mo. banc 1976). Ex. A. In *Tinker*, the Missouri Supreme Court reversed the conviction of a defendant charged with violating the City's peace disturbance ordinance because the court found she was not

5

charged with having said or done anything "calculated to provoke a breach of the peace." *Id*. at 24-25. The Court also found that the City's peace disturbance ordinance was not facially unconstitutional as being vague or overbroad because it required conduct calculated to provoke a breach of the peace. *Id*. at 23-24.

      Topic 10 of the Second Amended Notice of Deposition calls for "policies and procedures relating to Defendant's "compliance with the rule annunciated by" *Tinker*. Ex. A. Topic 11 calls for "[a]ny training or educational materials" "relating to the rule annunciated" by *Tinker*. Topics 12 and 13 call for "efforts undertaken" by the City or SLMPD to ensure its employees, agents, and officers "comply with *Tinker*." *Id*. Each of these four topics, as written, require the City to identify what actions it has taken or efforts it has made to *comply* with a ruling by the Missouri Supreme Court. These requests inherently require the City to designate a witness to analyze and interpret the "rule" of the *Tinker* case, and then based upon that interpretation, identify Police Department policies, procedures and training that he or she believes have bearing on the holdings in that case. *Tinker* speaks for itself, and Plaintiff's attempt to elicit testimony regarding the Defendant's interpretation of *Tinker* or identify what policies and procedures show the City's "compliance with the rule annunciated by" *Tinker* improperly calls for a lay deponent to testify regarding legal conclusions. See *Furminator, Inc. v. Munchkin, Inc*., No. 8CV00367 ERW, 2009 U.S. Dist. LEXIS 36964, 2009 WL 1176285, *3-4 (D. E.D. Mo. May 1, 2009) (granting motion for protective order in part and prohibiting party from making inquiries to 30(b)(6) witness that call for legal conclusions); *Johnson v. Charps Welding & Fabricating, Inc*., 2017 U.S. Dist. LEXIS 222472 at *51 (D. Minn. March 3, 2017)(granting motion for protective order seeking protection from a topic that called for legal conclusions).

6

In addition, Topics 10-13 are duplicative and unduly burdensome given that the City has already produced a deponent to testify regarding the City's policies and procedures and training with regard to the First Amendment. See Ex. A, Topics 8 and 9. Moreover, discovery on these topics is unnecessary and unduly burdensome because Plaintiff is already in possession of the Police Department's First Amendment-related training, education and policy materials for the time period sought, and with these materials in hand, Plaintiff and his counsel themselves may conduct the legal analysis that Topics 10-13 would require the City to provide via its designee.

The Defendant therefore asks that the Court strike Topics 10, 11, 12 and 13 in their entirety because providing a response would inherently require City designee to testify to improper legal conclusions. These requests are also duplicative and unduly burdensome because the City has already provided a designee to testify regarding its First Amendment training.

**Topics 27-29.** These three topics call for testimony detailing the City Police Department's Civil Disobedience Team's "tactical response to protests" following the Darren Wilson grand jury decision in 2014, the death of Mansur Ball-Bey in 2015, and the acquittal of Jason Stockley in 2017. However, the Civil Disobedience Team was not involved in the arrest of Plaintiff, nor did Plaintiff's arrest involve a "tactical response" of any kind. Therefore, testimony regarding the Civil Disobedience Team's "tactical responses" to three mass protest events, all of which involved some incidents of violence and property damage, are immaterial to any issues in this litigation.

First, the circumstances surrounding Plaintiff's arrest are in no way similar to the incidents of civil unrest necessitating a response by the Civil Disobedience Team following the Darren Wilson grand jury decision, the acquittal of Jason Stockley and the death of Mansur Ball-Bey. Following the announcement of the grand jury's decision not to indict Ferguson Police

Officer Darren Wilson on Nov. 24, 2014, protestors marched along Grand Boulevard and stopped traffic on Interstate 44. Later, after extensive damage was done to businesses along South Grand Avenue, the City police declared an "unlawful assembly" and chemical munitions were deployed late in the evening. On August 19, 2015, following the officer-involved shooting of Mansur Ball-Bey, mourners and demonstrators gathered near the scene of the shooting. In the day that followed, several instances of property damage and arson occurred, and at times rocks were thrown at officers. An unlawful assembly was declared, and chemical munitions were deployed. Following the announcement by the St. Louis City Circuit Court on September 15, 2017 of the acquittal of former police officer Jason Stockley, both peaceful demonstrations and civil unrest occurred throughout the City. After property damage occurred, along with some incidents of violence directed at police officers, unlawful assemblies were declared, and at times, chemical munitions were used. Dozens of arrests were made over the course of a weekend, including a mass arrest event during the late evening of September 17, 2017.

  The circumstances surrounding Plaintiff's arrest at the Peabody Opera House, however, share no similarities with these incidents of civil unrest. Here, Plaintiff was arrested for a peace disturbance during a private, ticketed, seated fundraising event at the Peabody Opera House for then-presidential candidate Donald Trump. He was not arrested in the context of a large-scale demonstration or in the context of civil unrest involving property damage, violence, and the use of chemical munitions. Unlike many of the arrestees in the abovementioned events, Brown was not arrested for failure to disperse following the declaration of an unlawful assembly. Nor was Plaintiff protesting an officer-involved shooting at the time of his arrest. Instead, Plaintiff was protesting a presidential-candidate for a major political party. During Trump's speech, Plaintiff, who was seated toward the front of the auditorium, intentionally caused a disturbance by making

8

a loud sound, inciting a reaction from others in attendance, at which point, Plaintiff stood up and engaged in an animated verbal altercation with other attendees. Plaintiff was arrested by two City officers; however, these officers were not members of the Civil Disobedience Team. There was no use of force against Plaintiff aside from the arresting officers leading him out of the auditorium and placing him in handcuffs. No chemical munitions were deployed, and in fact, the Civil Disobedience Officers remained on the exterior of the Peabody Opera House throughout the event and were not involved with his arrest.

Thus, the circumstances surrounding the arrest of Plaintiff are completely dissimilar to the circumstances necessitating the use of chemical munitions and arrests during civil unrest following the Jason Stockley and Darren Wilson decisions and the death of Mansur Ball-Bey. These three events have no bearing on Plaintiff's municipal liability claim because they are not sufficiently similar to the circumstances of his arrest. See *Andrews v. Fowler*, 98 F.3d 1069, 1074-75 (8th Cir. 1996). The protests, demonstrations, and civil unrest for which Plaintiff seeks discovery did not occur within the confides of a private, ticketed event, such as the political fundraiser at which Brown was arrested. They occurred outdoors, and for the most part, on public streets and sidewalks. Second, the arrest of Plaintiff did not involve the use of chemical munitions, nor was Plaintiff arrested in the context of a protest or demonstration involving violence or property damage. Plaintiff was not arrested by members of the Civil Disobedience Team following the announcement of an "unlawful assembly." Therefore, testimony concerning the "tactical response" by the Civil Disobedience Team to three incidents of large-scale civil unrest involving violence and property damage have no bearing on his arrest by two regular patrol officers at a private political fundraising event. For that reason, Topics 27-29 call for

9

testimony concerning events that are factually dissimilar to the misconduct alleged in plaintiff's complaint.

Moreover, the tactical response related to the protests following the acquittal of Jason Stockley are additionally irrelevant and immaterial because these protests occurred more than one year subsequent to the date on which Plaintiff was arrested. Subsequent events, like the City Police Department's response to protests in 2017, are irrelevant and immaterial and could not be the "moving force" behind Brown's alleged constitutional violation. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). Indeed, Plaintiff must establish that the information sought bears on a custom, practice or policy that could have *caused* the claimed constitutional violation. *Monell*, 436 U.S. at 691. Common sense dictates that such a policy, practice or custom must predate the alleged constitutional violation in order for it to have "caused" the unconstitutional act. Thus, the after-the-fact events, including the protests in response to the acquittal of Jason Stockley cannot be said to have "caused" Plaintiff's claimed constitutional violation and are irrelevant to his claims.

Similarly, here, even assuming the mass protests following the Stockley acquittal were factually similar to the circumstances surrounding Plaintiff's arrest, which they are not, they are irrelevant and immaterial to Plaintiff's *Monell* claim because subsequent events could not be said to be the "moving force" behind his alleged unlawful arrest. *Monell*, 436 U.S. at 694. Moreover, the demonstrations, protests and civil unrest that Plaintiff has identified in Topics 27, 28, and 29 are too dissimilar to the circumstances surrounding Plaintiff's arrest, and those protests bear no connection to Donald Trump, or much less any political figure's candidacy.

This Court should bar Plaintiff from seeking testimony regarding Topics 27, 28 and 29 because they call for testimony involving protest activity and civil unrest occurring in completely

different contexts and call for information that is irrelevant, immaterial and overbroad and unduly burdensome.

**Topic 35**. Topic 35 calls for testimony concerning "[t]he factual basis for the City's affirmative defenses asserted in its Answer to the Complaint." The Court should bar Plaintiff from eliciting testimony on this topic because to the extent it does not call for legal conclusions, it is duplicative, burdensome, and requires undue expense.

The individual defendants assert in their affirmative defenses, the following defenses: 1) the complaint fails to state a claim upon which relief may be granted because arguable probable cause existed for Plaintiff's arrest; 2) the claims are barred by the doctrine of qualified immunity because Defendant's conduct did not violate clearly established statutory or constitutional rights; 3) Defendants are immune from liability for Plaintiff's state law claims under the Official Immunity and Public Duty doctrines; 4) Plaintiff's state law claims are barred by the applicable statute of limitations; and 5) Plaintiff's claims are barred by collateral estoppel and res judicata. Doc. 31-34. The City asserts the same affirmative defenses, with the exception of qualified and official immunities and public duty doctrines. Doc. 62.

Each of the affirmative defenses asserted by the defendants involve legal doctrines, and therefore, Plaintiff's request for testimony concerning the affirmative defenses calls for legal conclusions. In *Johnson v. Charps Welding & Fabricating, Inc.*, the court granted a motion for a protective order for a Rule 30(b)(6) deposition topic that called for "[a]ll facts which substantiate Plaintiffs' allegations" concerning its claim for damages. 2017 U.S. Dist. LEXIS 222472 at 49-51. The court found that the claim for damages was in part brought under ERISA and a statutory provision provided for the calculation of attorney's fees and costs. *Id*. at 50. The Court granted the plaintiffs' motion for a protective order on this topic, saying it "recognizes the folly in

11

deposing a Rule 30(b)(6) designee on a subject that calls only for legal conclusions and statutorily mandated calculations of damages." *Id*. at 51. Similarly, here, Plaintiff's request for testimony concerning the facts that substantiate the existence of probable cause, the officers' entitlement to qualified and official immunities, and the application of public duty doctrine likewise call for legal conclusions.

Moreover, the facts upon which the defendants' affirmative defenses are based are well-established by video and testimonial evidence, and additionally, the individual defendants have already provided (or are scheduled to provide) deposition testimony in this matter. For these reasons, Plaintiff's request for the City to designate and prepare an additional individual to provide testimony concerning the facts of events that are clearly depicted in a video recording is duplicative, burdensome and requires undue expense. Moreover, Plaintiff's request for testimony concerning the legal doctrines set forth in defendants' affirmative defenses is improper and calls for legal conclusions and work product. This Court should issue an order barring Plaintiff from eliciting testimony on Topic 35.

## CONCLUSION

For the foregoing reasons, this Court should enter an order barring Plaintiff from eliciting testimony on Topics 7, 10-13, 27-29, and 35 because these topics exceed the scope of discovery permitted under Rule 26(b).

## CERTIFICATE OF ATTEMPT TO RESOLVE

The undersigned counsel Erin McGowan conferred with opposing counsel, Amy Breihan, in good faith, by telephone on June 2, 2020 at approximately 4 p.m., regarding the matters in dispute in the Motion for Protective Order, but after sincere efforts to resolve the disputes, counsel were unable to reach an accord.

Respectfully submitted,

JULIAN BUSH
CITY COUNSELOR

By: /s/ Erin K. McGowan
Erin K. McGowan #64020MO
Associate City Counselor
City Hall, Room 314
St. Louis, MO  63103
314.622.3361
FAX: 314.622.4956
McGowanE@stlouis-mo.gov
Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify this Motion was electronically filed on this 3rd day of July 2020 with the Court for service by means of Notice of Electronic Filing upon all attorneys of record.

/s/ Erin K. McGowan