UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RODNEY BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:18-cv-00389-MTS |
| ) | |
| CITY OF ST. LOUIS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This case is before the Court on Defendant City of St. Louis's Motion to Dismiss Count VIII of the Second Amended Complaint, Doc. [100]. This matter is fully briefed and ready for adjudication. Because the Court finds Plaintiff failed to state a claim upon which relief can be granted, the Court will grant the Motion.

**I.   Background**

On March 11, 2016, Plaintiff attended a rally featuring President Donald Trump, held at the Peabody Opera House in St. Louis, while the then-candidate was campaigning for the 2016 presidential election. Doc. [94] ¶ 21. Plaintiff did not attend the rally "as a supporter" of Trump but rather as "a concerned and engaged citizen and registered voter." *Id.* ¶ 21. During the rally, Defendant laughed in response to one of Trump's comments. *Id.* ¶ 26. In response to Plaintiff's laughter, Trump called from the podium, "[g]et him out," referring to Plaintiff. *Id.* ¶ 27. In "compliance with Trump's commands," police officers "physically escorted" Plaintiff out of the rally, *id.* ¶ 28, and arrested Plaintiff for a "general peace disturbance," *id.* ¶ 30.

On April 6, 2016, the City of St. Louis filed formal charges against Plaintiff for peace disturbance under Section 15.46.030 of the St. Louis City Municipal Ordinance Code. *Id.* ¶ 34. A

1

judge acquitted Plaintiff of the charge on September 18, 2017. *Id.* ¶ 41. Plaintiff subsequently filed this action alleging violations of his constitutional rights in addition to Missouri state-law violations stemming from his removal from the rally and his arrest and prosecution. He alleged claims against Trump, individual police officers, and against the City of St. Louis under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). This Court later dismissed the claims against Trump and some claims against the City and individual Defendants. *See* Doc. [55].

In August 2020, Plaintiff filed a Motion to Amend the Complaint to add a *Monell* claim against the City alleging liability based on its failure to train. Doc. [88]. No Defendant, including the City, filed any opposition to Plaintiff's Motion to Amend, and the Court granted it. Doc. [93]. After Plaintiff filed the Amended Complaint, the City moved to dismiss the new count against it, which is now before the Court.[1]

## II.    Standard[2]

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief." To meet this standard and to survive an FRCP 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). This requirement of facial plausibility means the factual content of the plaintiff's

---

[1] The Court notes that the better practice, if only for the sake of judicial efficiency, would have been to object to amendment. Futility is a valid basis for denying leave to amend. *U.S. ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005). An amendment is futile if the amended pleading could not withstand a motion to dismiss under Rule 12(b)(6), which is what the City now argues. *Trademark Med., LLC v. Birchwood Labs., Inc.*, 22 F. Supp. 3d 998, 1002 (E.D. Mo. 2014).

[2] This section is taken largely from the court in *White v. City of St. Louis*, No. 4:18-cv-00518-SRC, 2019 WL 6022259, at *2 (E.D. Mo. Nov. 14, 2019), *appeal dismissed*, No. 19-3697, 2020 WL 3250494 (8th Cir. Jan. 6, 2020).

allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court must draw reasonable inferences in favor of the nonmoving party. *Ritchie Cap. Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 764 (8th Cir. 2011).

When ruling on a motion to dismiss, a court must liberally construe a complaint in favor of the plaintiff. *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitations of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. "A pleading that merely pleads labels and conclusions or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (internal quotations omitted). Although courts must accept all factual allegations as true, they are not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (quotations and citation omitted); *Iqbal*, 556 U.S. at 677–78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679. Therefore, a court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* This "context-specific" task requires the court to "draw on its judicial experience and common sense." *Id.* at 679, 682. In determining the

3

plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567. The Court must then determine whether the plaintiff plausibly alleges a violation of the law. *Id.* The well-pleaded facts must permit more than the "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

## III. Discussion

"The Supreme Court has set a high bar for establishing municipal liability under § 1983." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 405 (1997). The Supreme Court specifically has noted that "where a claim turns on a failure to train," as it does here, "a municipality's culpability for a deprivation of rights is at its most tenuous." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

To state a *Monell* claim for failure to train against the City, Plaintiff must plead facts establishing that: "(1) the [City's] training practices [were] inadequate; (2) the [City] was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by [the City]'; and (3) an alleged deficiency in the . . . training procedures actually caused the plaintiff's injury." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). Plaintiff failed to do so. The Complaint does not allege facts that state a claim to relief on a failure to train theory

4

that is "plausible on its face." *See Iqbal*, 556 U.S. at 678. The Court combed through the Amended Complaint looking for facts supporting the three necessary elements but found few. While Plaintiff incorporated the preceding paragraphs of the Amended Complaint into the failure to train claim, that claim consists of only two paragraphs, both of which are filled exclusively with legal conclusions. Doc. [94] ¶¶ 105–07.

Plaintiff comes closest to pleading facts sufficient to establish the first element—that the City's training practices were inadequate. Specifically, Plaintiff contends that the officers were not trained properly on what he calls the "'fighting words' limitation to the City's general peace disturbance ordinance" under *City of St. Louis v. Tinker*, 542 S.W.2d 512 (Mo. banc 1976). *Id.* ¶¶ 36–37; s*ee Elbert v. Kansas City, Mo.*, No. 4:18-cv-788-RK, 2019 WL 1374570, at *4 (W.D. Mo. Mar. 26, 2019) (granting motion to dismiss where complaint did not allege "how or why the [training] programs were inadequate"). While Plaintiff alleged on what the officers should have been trained, he did not provide any facts on the actual training they received. Employees "can always receive more training." *Liptak v. Ramsey Cty.*, 16-cv-225-ADM-JSM, 2016 WL 5349429, at *10 (D. Minn. Sept. 23, 2016). Thus, "unless the pleading identifies the municipality's existing training policies and procedures, it cannot be said that its employees were inadequately trained." *Id.* Even assuming for the sake of argument that Plaintiff satisfied the first element, the remaining elements plainly were not.

For the second element, Plaintiff states the conclusion that the City "has been deliberately indifferent," but Plaintiff failed to provide any *facts* that tend to show how the City was deliberately indifferent. This failure alone is enough to doom Plaintiff's claim. *See, e.g.*, *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming dismissal of failure to train claim where complaint failed to provide facts showing "training practices were the product of the [government's]

5

deliberate and conscious choices."); *Baude v. City of St. Louis*, No. 4:18-cv-1564-RWS, 2019 WL 4750254, at *6 (E.D. Mo. Sept. 30, 2019) (dismissing failure to train claim where complaint "d[id] not provide any facts" indicating "City was deliberately indifferent when it adopted the training policies").

While the Amended Complaint details what it calls the City's "[h]istory of [b]iased [p]olicing," Doc. [94] at 10, nothing it discusses relates to general peace disturbance, the ordinance under which Plaintiff was arrested and prosecuted and on which Plaintiff alleges officers are not properly trained. *Id.* ¶¶ 33–37, 42–51. In fact, the Amended Complaint does not allege a single instance of *any* individual being arrested for what it calls a "general peace disturbance" [3] other than those arrested at the Trump event that day. *Id.* ¶ 33. Since Plaintiff does not allege any other instances of such an arrest, which could establish that the City would have been on notice from past occurrences, it is even more difficult to establish that the City made a "deliberate and conscious choice" not to train its officers on the ordinance. *See Connick*, 563 U.S. at 64 (noting a single instance could be sufficient for a failure to train claim only where the "unconstitutional consequences" of the failure to train were "highly predictable" and "patently obvious").

For the final element, Plaintiff states that the City's failure to train the officers "directly caused" and was "the moving force behind [Plaintiff's] constitutional deprivations and resulting

---

[3] The closest Plaintiff comes is noting that "SLMPD arrested over 300 protestors or demonstrators" over the eighteen days following the acquittal of Jason Stockley—which, in any event, occurred *after* Plaintiff's arrest. Doc. [94] ¶ 43. Plaintiff, however, does not allege that any of those arrests were for a "general peace disturbance," much less that any were arrested for a "general peace disturbance" absent "fighting words." *See id.* at 9 n.9. While the Court has construed the Complaint liberally and in the light most favorable to Plaintiff, *see Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008), "[i]t is not up to this Court to conjure up unpled allegations to save a complaint or to try to connect the dots between plaintiff's allegations and his legal theories." *Aldridge v. City of St. Louis*, No. 4:18-cv-1677-CAS, 2019 WL 1695982, at *11 (E.D. Mo. Apr. 17, 2019) (internal quotations and citations omitted). Plaintiff argues in his Opposition brief that his arrest "falls into a larger pattern of the City's officers arresting individuals under the general peace disturbance ordinance absent the required fighting words," Doc. [104] at 3, but even there he gives no instances of anyone else being arrested under the general peace disturbance ordinance absent fighting words.

injuries." Doc. [94] ¶ 107. Plaintiff correctly recites the standard, but such a pleading is inadequate. *See Doe v. Hansen*, No. 4:16-cv-546-JAR, 2018 WL 2223679, at *10 (E.D. Mo. May 15, 2018) ("Plaintiffs must show a direct causal link between the failure to train or supervise and their ultimate injury; in other words, the municipal inaction must be the 'moving force' behind the constitutional violation."), *aff'd sub nom. Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184 (8th Cir. 2019). No facts establish the City's failure to train "directly caused" or was "the moving force behind" Plaintiff's alleged injuries. The Amended Complaint does not make it plausible on its face that "the injury [would] have been avoided had the employee[s] been trained under a program that was not deficient in the identified respect." *City of Canton*, 489 U.S. at 391. The Court cannot simply assume the failure to train directly led to the alleged injuries. Doing so "would result in *de facto respondeat superior* liability on municipalities—a result [ ] rejected in *Monell*." *Id.* at 392.

Rather than facts that tend to show the failure to train directly caused the situation, Plaintiff's facts point to something else—or someone else—as the moving force behind Plaintiff's removal from the rally.[4] Plaintiff alleges that dissenters at Trump's rallies had a history of being removed. *See, e.g.*, Doc. [94] ¶¶ 14, 17. According to Plaintiff, "Trump himself" wanted Plaintiff "out of there" that day. *Id.* ¶¶ 26, 27. Plaintiff went further. Trump not only *wanted* Plaintiff out, Trump "called for," "command[ed]," and "order[ed]" Plaintiff's removal from the event, and officers "complied." *See id.* ¶ 20 ("Trump called for the removal of Rodney Brown. SLMPD officers complied."); *id.* ¶ 28 ("In compliance with Trump's commands, Defendants Boettigheimer and Korte physically escorted Rodney out of the Rally."); Doc. [41] at 5 (noting that officers were "complying with [Trump's] order" when they removed Plaintiff).[5]

---

[4] Plaintiff was free to "state as many separate claims or defenses as [he] ha[d], regardless of consistency," Fed. R. Civ. P. 8(d)(3), but Plaintiff specifically incorporated these facts into the failure to train claim, Doc. [94] ¶ 105.
[5] *See also* Doc. [94] ¶ 53 ("Defendants arrested Rodney Brown for lawfully exercising his constitutional right of free speech and assembly, took custody of Rodney, and detained him hours—all after being told by Trump to 'Get him

Thus, Plaintiff has alleged and argued that the officers were listening to—indeed, "complying with"—Trump's direction. In addition, Plaintiff states that Defendants' actions in removing him were "intentional, wanton, [and] malicious." Doc. [94] ¶¶ 58, 105. Plaintiff does not explain how training from the City would have stopped the individual Defendants from *maliciously* and *intentionally* doing wrong. In sum, Plaintiff has not provided facts that show the "rigorous standards of culpability and causation" that "must be applied to ensure [the City] is not held liable solely for the actions of its employee." *See Bd. of Cty. Comm'rs of Bryan Cty., Okla.*, 520 U.S. at 405.

## Conclusion

Given Plaintiff's failure to plead facts sufficient to make the failure to train claim plausible on its face, the Court will dismiss the claim. In its briefing in opposition to the Motion, Plaintiff requested that if the Court dismissed the claim, the Court also grant Plaintiff leave to amend his Complaint to address any purported deficiencies. Given the age of this case, the amount of discovery already conducted, the Court having granted leave to allow the filing of this claim once already, and the Plaintiff's failure to provide any indication that further amendment would not be futile, the Court will not allow amendment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of St. Louis's Motion to Dismiss, Doc. [100], is **GRANTED**.

Dated this 22nd day of December, 2020.

                                              MATTHEW T. SCHELP
                                              UNITED STATES DISTRICT JUDGE

---

out!'"); *id.* ¶ 56 (referencing Trump's "command to SLMPD to remove [Plaintiff] from the Rally" and calling Trump a "willful participant in the detention and arrest of Rodney Brown.").