**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| RODNEY BROWN,            )<br>                                    )<br>       Plaintiff,              )<br>                                    )<br>   vs.                           )<br>                                    )<br>CITY OF ST. LOUIS, et al., )<br>                                    )<br>       Defendants.        ) | Case No. 4:18-cv-00389-MTS |

**MEMORANDUM AND ORDER**

This case comes before the Court on the Motion for Protective Order by Defendant City of St. Louis.  Doc [84].  For the reasons stated herein, the Court will grant it in part and deny it in part.

**I.   Background**

On March 11, 2016, Plaintiff attended a rally featuring President Donald Trump, held at the Peabody Opera House in St. Louis, while the then-candidate was campaigning for the 2016 presidential election.  Doc. [94] ¶ 21.  Plaintiff did not attend the rally "as a supporter" of Trump but rather as "a concerned and engaged citizen and registered voter." *Id.* ¶ 21.  During the rally, Defendant laughed in response to one of Trump's comments. *Id.* ¶ 26.  In response to Plaintiff's laughter, Trump called from the podium, "[g]et him out," referring to Plaintiff. *Id.* ¶ 27.  In "compliance with Trump's commands," police officers "physically escorted" Plaintiff out of the rally, *id.* ¶ 28, and arrested Plaintiff for a "general peace disturbance," *id.* ¶ 30.

On April 6, 2016, the City of St. Louis filed formal charges against Plaintiff for peace disturbance under Section 15.46.030 of the St. Louis City Municipal Ordinance Code. *Id.* ¶ 34.  A judge acquitted Plaintiff of the charge on September 18, 2017. *Id.* ¶ 41.  Plaintiff subsequently

filed this action alleging violations of his constitutional rights in addition to Missouri state-law violations stemming from his removal from the rally and his arrest and prosecution.  He alleged claims against Trump, individual police officers, and against the City of St. Louis under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).  This Court later dismissed the claims against Trump and some claims against the City and individual Defendants.  *See* Doc. [55].

In August 2020, Plaintiff filed a Motion to Amend the Complaint to add a *Monell* claim against the City alleging liability based on its failure to train.  Doc. [88].  In his Second Amended Complaint, Plaintiff alleges eight counts.  Count I alleges Unlawful Seizure/False Arrest pursuant to 42 U.S.C. § 1983 against all individual Defendants.  Count II alleges Malicious Prosecution pursuant to § 1983 against all individual Defendants.  Count III alleges Retaliation for Exercise of First Amendment Rights in Violation of the First and Fourteenth Amendments to the United States Constitution pursuant to § 1983 against all individual Defendants.  Count IV alleges a *Monell* Claim for Violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 against the City of St. Louis.  Count V alleges False Arrest pursuant to Missouri law against all individual Defendants.  Count VI alleges Malicious Prosecution pursuant to Missouri law against all individual Defendants.  Count VII alleges Retaliation for Exercise of Freedom of Speech and Right to Peaceable Assembly in Violation of Article I, Sections 8 and 9 of the Missouri Constitution against all individual Defendants.  Finally, Count VIII alleges another *Monell* Claim, this time for Failure to Train against the City of St. Louis.[1]

---

[1] Contemporaneously with this Order the Court has issued an order granting the City's Motion to Dismiss Count VIII.

As part of discovery, Plaintiff served the City a 37-topic Rule 30(b)(6) corporate representative deposition notice. Doc. [84-1]. Rule 30(b)(6) requires a party naming an entity as a deponent to "describe with reasonable particularity the matters for examination." The onus then falls to the entity to "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf" to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).

The City has moved for a Protective Order on topics 7, 10–13, 27–29, and 35, claiming the topics "exceed the scope and limits of Rule 26(b)." In its briefing, the City noted it had produced four witnesses to testify on eleven of the topics and intended to produce additional witnesses on more topics. In a recent status conference in this case, see Doc. [103], the City represented that it had produced nine or more witnesses to testify on more than twenty of the topics. The parties, though, remain at an impasse on topics 10–13, 27–29, and 35.[2]

## II. Governing Law

Federal Rule of Civil Procedure 26 sets forth the scope of discovery. Subsection (b)(1) states that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The federal rules "permit liberal discovery," but it should be done "'for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes.'" *Misc. Docket Matter No. 1 v. Misc Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Seattle Times Co.*

---

[2] Plaintiff voluntarily withdrew topic number seven. Doc. [85] at 1. The request for a protective order as to topic seven is denied as moot.

*v. Rhinehart*, 467 U.S. 20, 34 (1984)). Pretrial discovery through depositions has "'a significant potential for abuse.'" *Id.* To curb this potential, the Federal Rules allow the Court to issue protective orders upon a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

Under the "good cause" provision of Fed. R. Civ. P. 26(c), the burden is on the movant to show necessity of a protective order. *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). This analysis "contemplates a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.* The determination must also include "a consideration of the relative hardship to the non-moving party should the protective order be granted." *Id.* "Because of liberal discovery and the potential for abuse, the federal rules 'confer[] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection in required.'" *Misc. Docket Matter*, 197 F.3d at 925 (quoting *Seattle Times*, 467 U.S. at 34 (1984)).

**III. Analysis**

    **A. Topics 10–13**

Topics ten through thirteen all relate to *City of St. Louis v. Tinker*, 542 S.W.2d 512 (Mo. banc 1976), a decision of the Supreme Court of Missouri that involved the constitutionality of a peace disturbance ordinance. Topics ten and eleven concern policies, procedures, training materials, and educational materials promulgated to comply with the rule expressed in *Tinker*, and topics twelve and thirteen concern efforts by the City and the St. Louis Metropolitan Police Department to ensure such compliance when officers enforce the public disturbance ordinance.

The City claims topics ten through thirteen are "duplicative and unduly burdensome" because the City has already produced a witness to testify regarding the "[p]olicies and procedures

relating to the enforcement of the City's general peace disturbance ordinance" and "training or educational materials provided to or generated by SLMPD since January 1, 2016 relating to First Amendment Rights or the City's general peace disturbance ordinance."  Doc. [84] at 7, [84-1] ¶¶ 8–9.  In addition, the City argues these topics are unduly burdensome because Plaintiff has materials for First Amendment-related training, education, and policy for the time period sought.  The Court agrees.  Topics ten through thirteen are subsumed in topics eight and nine for which the City has produced a witness, along with written materials.[3]  Forcing the City to produce yet another witness to testify on a specific topic subsumed in another—here, a specific case within a specific body of law—would not be proportional to the needs of the case.  The City need not provide a witness to testify to these matters.

**B.  Topics 27–29**

In topics twenty-seven through twenty-nine, Plaintiff seeks a witness to testify on St. Louis Metropolitan Police Department's "tactical response[s] to protests" and "any subsequent investigation[s] . . . or review[s]" following three events that caused large protests and civil disorder: (1) the declination of charges against Darren Wilson; (2) the death of Mansur Ball-Bey; and (3) the acquittal of Jason Stockely.  Doc. [84-1] ¶¶ 27–29.  Plaintiff argues that since his *Monell* claim is about the "City custom regarding SLMPD's treatment of people engaged in First Amendment activity," then "SLMPD's conduct in response to protests in 2014, 2015, and 2017 [is] directly relevant."  Doc. [85] at 7.  In his argument, Plaintiff describes his claim only vaguely—not specifying who is subjected to what treatment while engaged in what activity protected by which of the rights in the First Amendment.

---

[3] In his Suggestions in Opposition, Plaintiff does not address the argument of their duplicative nature.  Doc. [85] at 3–5.  The Court agrees with the City that they are duplicative given the Plaintiff's claims.  *See* Doc. [94] ¶¶ 79, 106.

5

The City correctly points out that the circumstances surrounding Plaintiff's arrest have no similarity to these three events.  Much of the protests and civil disorder following the three events took place on public property, like sidewalks and streets, adjacent to private property.  The City notes that during the protests following these three events, unlawful assemblies were declared in specific areas following civil disorder, including damage to property and injuries to police officers.  Police eventually arrested individuals for failing to disperse—among other more-serious crimes.  At times following each event, police used chemical munitions.

Here, Brown alleges he attended the ticketed Trump event at issue, held on private property, "as a concerned and engaged citizen and registered voter."  Doc. [94] ¶ 21.  While he at times has appeared to refer to himself as a protestor,[4] he does not allege protesting triggered his arrest at the Trump event.  *See, e.g.*, Doc. [94] ¶¶ 26–28.  Rather, he alleges he was arrested though he did "nothing more than laugh[]."  Doc. [94] ¶ 2.  At any rate, Plaintiff's actions at the Trump event were unlike those necessitating a "tactical response" following the three events that triggered large protests on which Plaintiff seeks discovery.  Indeed, Plaintiff does not allege that the tactical response team had any part in his arrest.  Nor does he allege anyone used chemical munitions during his arrest.

For a *Monell* claim, there "must exist a prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law," *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996) (quoting *Monell*, 436 U.S. at 691), or a "practice of municipal officials that is not authorized by written law, but which is 'so permanent and well-settled . . . as to [have] the force of law.'"  *Russell v. Hennepin Cty.*, 420 F.3d 841, 849 (8th Cir. 2005) (quoting *Monell*, 436 U.S. at 691).  The dissimilarities in these unrelated events would make establishing a "pattern,"

---

[4] *See e.g.*, Doc. [85] at 6 (referencing "SLMPD's retaliatory arrest of protesters other than Rodney Brown"); Doc. [39] at 5 (referencing "baseless prosecutions against activists and protesters, including Rodney Brown").

6

something "persistent and widespread" or "permanent and well-settled," fanciful. Having the City's overstretched law enforcement divisions testify on the police's tactical response to three events, which are related to the event in question only, if at all, when couched in the vaguest of terms, makes the burden of the proposed discovery outweigh its likely benefit to the Plaintiff. This conclusion is reinforced by the number of witnesses the City has produced and the topics on which it has testified already in addition to the strained resources and logistics from the COVID-19 pandemic. Requiring depositions on topics twenty-seven through twenty-nine would not be proportional to the needs of the case and would not meaningfully "assist in the preparation and trial, or the settlement, of [the] litigated disputes.'" *See Misc. Docket*, 197 F.3d at 925 (quoting *Seattle Times*, 467 U.S. at 34).

## C. Topic 35

Topic 35 concerns "[t]he factual basis for the City's affirmative defenses asserted in its Answer to the Complaint." Doc [84-1] ¶ 35. The City claims that this topic calls for legal conclusions, is duplicative and burdensome, and requires undue expense. Doc. [84] at 11. While the City's asserted affirmative defenses necessarily have legal components, they also have—or should have—factual underpinnings. Plaintiff may inquire into those *facts*.[5] The Court agrees with Plaintiff that he should be permitted to inquire what *facts* support the City's allegation that probable cause existed to arrest him, for example.

The City argues that the facts upon which its affirmative defenses are based are "well-established by video and testimonial evidence," and additionally, that the individual Defendants have provided deposition testimony in this matter on the same topics. That argument lacks merit in this case. *See, e.g.*, *Whitt v. City of St. Louis*, No. 4:18-cv-1294-RLW, 2020 WL 7122615, at

---

[5] In the briefing, Plaintiff's counsel "concede[d] they cannot inquire as to a legal conclusion about any of the City's affirmative defenses," and they represented to the Court that they do not "intend to." Doc. [85] at 8.

*10 (E.D. Mo. Dec. 4, 2020) (rejecting similar argument because plaintiff was "entitled to ask these questions of the City—as opposed to the officer Defendants—and obtain its sworn testimony in response."). The Court finds allowing the deposition on the *factual* basis of the City's affirmative defenses would be proportional to the needs of the case.

**IV.**  **Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Protective Order, Doc. [84], is **GRANTED in part and DENIED in part**. The City need **not** provide witnesses to testify on topics 10–13 and 27–29. The City **must** designate a witness to testify on topic 35, consistent with this memorandum.

Dated this 22nd day of December, 2020.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE