**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| RODNEY BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | )   Cause No. 4:18-CV-389-MTS |
| v. | ) |
| | ) |
| CITY OF ST. LOUIS, *et al*. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE**
**TESTIMONY OF ROBERT R. PUSINS**

COME NOW Defendants Matthew Boettigheimer, Steven Korte, Joseph Steiger, and Phil Harden (referred to herein collectively as the "Individual Defendants") and the City of St. Louis ("City"), and for their Reply in Support of Their Motion to Exclude the Testimony of Robert R. Pusins, state as follows:

**INTRODUCTION**

On February, 12 2021, Defendants filed their Motion to Exclude the Testimony of Robert R. Pusins ("Pusins") who Plaintiff designated to testify as an expert in the field of police practices. Doc. 111.  In their Memorandum in Support, Defendants argue that this Court should exclude the testimony of Pusins pursuant to FRE 702 because his opinions: 1) are improper legal conclusions that invade the province of the Court; 2) lack foundation; 3) are irrelevant and immaterial to the issues to be decided in this litigation; and 4) supply the fact finder with no information other than what Pusins believes the verdict should be. Doc. 112-1.

Plaintiff on February 26, 2021 filed his Memorandum in Opposition to Defendants' Motion to Exclude the Testimony of Robert S. Pusins ("Response"). Doc. 118. In that Response, Plaintiff concedes that Pusins cannot be permitted to render opinions regarding probable cause,

1

acknowledging that the Eighth Circuit has made clear that it will not permit expert witnesses to "to offer legal conclusions that touch upon the ultimate legal issues." Doc. 118, p. 5 citing *Swink v. Mayberry*, Case No. 4:17–CV–791 PLC, 2018 WL 2762549, *3 (E.D. Mo. June 8, 2018).

Nevertheless, Plaintiff argues that the Court should otherwise permit Pusins to provide testimony about "industry standards" and "generally accepted police practices." Doc. 118, p. 6. Plaintiff's Response, however, fails to identify any "standards" and "practices" that are actually germane to the issue to be decided by the jury in this litigation. Plaintiff also fails to explain how, given the narrow issue to be decided in this case, testimony concerning industry standards or generally accepted police practices will assist the jurors to determine any fact at issue in this litigation.

Accordingly, Plaintiff fails to carry his burden to show that Pusins' testimony would assist the trier of fact to understand the evidence or to determine a fact in issue. *Lauzon v. Senco Products, Inc*., 270 F.3d 681, 686 (8th Cir. 2001). His testimony should be excluded.

## ARGUMENT

1.  **Pusins' opinions pertaining to police practices concerning arrests, mass arrests and report writing are inadmissible because they will not assist the jury to understand the evidence or to determine a fact in issue.**

As Plaintiff correctly points out in his Response, "[a] central question in this case is whether there was probable cause to arrest Rodney Brown on March 11, 2016." Doc. 118, p. 5. Though Plaintiff "concedes that Mr. Pusins may not testify that Defendants lacked probable cause to arrest Rodney Brown," he nevertheless argues that Pusins should be permitted to provide expert testimony "to assist the Court in resolving that ultimate legal question, even if doing so 'embraces an ultimate issue.'" Doc. 118, p. 6 citing FRE 704.

2

In particular, Plaintiff argues that Pusins should be permitted to testify regarding the following subjects:

> (1) generally accepted police practices regarding arrests, including options available to Defendants other than arresting Mr. Brown (Report at 9-11), and including mass arrests (Report at 13); and (2) law enforcement standards regarding report-writing and documentation (Report at 12-18).

Doc. 118, p. 7.

Plaintiff fails to carry his burden to show that testimony concerning "generally accepted police practices regarding arrests," mass arrests, and standards for report writing will assist the trier of fact to decide any issue in this litigation. The Court should therefore bar Pusins from providing testimony on these three topics.

First, Plaintiff fails to explain which "generally accepted police practices regarding arrests" are germane to the issue of probable cause. Here, it is undisputed here that Plaintiff was arrested. Moreover, Plaintiff does not allege that the arresting officers used excessive force in effecting his arrest. The only question to be answered by the jury is whether, at the moment of Plaintiff's arrest, a reasonable officer in Defendant Boettigheimer and Korte's position, with the knowledge they possessed at the time, would have believed that Plaintiff had committed a peace disturbance violation. See Model Instruction 4.51, Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit. Plaintiff fails to explain what precise testimony concerning generally accepted police procedures and practices will assist with answering this narrow question. In fact, aside from Pusins' observation that "an arrest should only be conducted based on probable cause," Ex. B, p. 8, Pusin's report is actually bereft of any specific opinions concerning generally accepted police practices regarding arrests. Pusins' testimony is not needed because the constitutional requirement that an arrest be supported by probable cause will be

made clear to the jury within the jury instructions, and in any event, expert testimony concerning constitutional standards is properly prohibited. See *Sanders v. Studdard*, 2014 U.S. Dist. LEXIS 98817 at *25 (W.D. Mo. Feb. 12, 2014).

Plaintiff cites *N.S. v. Kansas City, Missouri, Board of Police Commissioners*, Case No. 4:16-CV-00843-BCW, 2018 U.S. Dist. LEXIS 234362, 2018 WL 10419366, *1 (W.D. Mo. Feb. 7, 2018) in support of their argument that Pusins be permitted to testify regarding "industry standards and generally accepted police practices." p. 6. In *N.S.* the court permitted a police practices expert to provide testimony relating to model policy guidelines relating to the use of deadly force in a suit in which the plaintiff alleged an officer acted unreasonably in shooting her decedent. *Id*. at *8. In reaching its decision to permit the expert to testify, the court first noted that "[a]n expert may properly testify on industry standards and/or applicable regulations in order **to orient the jury to issues outside the common knowledge or experience of a lay person**." *Id*. at *4 (emphasis added) citing *Pelster v. Ray*, 987 F.2d 514, 526 (8th Cir. 1993). However, the court noted, "where 'normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from the given facts and circumstances, expert' testimony may be properly excluded as unnecessary." *Id*. citing *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2012) (citing *Frase v. Henry*, 444 F.2d 1228, 1231 (10th Cir. 1971)).

In reaching its conclusion that testimony concerning model policy guidelines relating to deadly force was admissible, the court reasoned that in the specific context of an excessive force claim, "standards relating to the continuum of force and training in the use of deadly force are helpful in that they are not commonly known by laypersons and represent the study and experience of the profession." *Id*. at *8 (citation omitted). The Court ruled that expert testimony concerning model policy guidelines relating to the use of deadly force was admissible but the

4

expert would not be permitted to testify that failing to follow these guidelines establishes that the officer's actions were unreasonable. *Id*.

Similarly, in *Swink v. Mayberry*, the Court permitted plaintiff's expert to testify regarding standards and policies with regard to vehicular pursuits and use of force, two subjects outside the common knowledge or experience of a lay person. 2018 U.S. Dist. LEXIS 96633 at*3. There, the court ruled that "[t]o the extent that Plaintiff proffers [the expert's] testimony to 'help the jury' understand 'police practices' and '[w]hat helps and what hurts in seeking to apprehend a fleeing suspect,' such testimony is admissible." *Id*. at *9. (citation omitted). The court ruled the expert "may therefore testify about prevailing standards and policies in the field of law enforcement with respect to vehicular pursuits and use of force." *Id*. at *9.

Here, in contrast to *N.S.* and *Swink*, Pusins' testimony will not assist the jury in understanding any issue outside the common knowledge or experience of a lay person. Plaintiff does not allege he was subjected to excessive force so no testimony concerning standards relating to the continuum of force or training in use of force is necessary. As explained above, Plaintiff completely fails to explain what industry standards or generally accepted practices concerning arrests are outside the knowledge or experience of a lay person.

Given that a jury's role is "limited to settling disputes as to predicate facts," *Arnott v. Mataya*, 995 F.2d 121, 123-24 (8th Cir. 1993), lay jurors are competent to review the video evidence in this case, listen to witness testimony and make conclusions as to the facts and whether probable cause existed that Plaintiff committed a peace disturbance violation. Whereas testimony concerning training in the use of deadly force or the standards and policies with regard to vehicular pursuits could impart knowledge that might not be commonly known to the typical lay juror, here, given the straightforward factual circumstances surrounding Plaintiff's arrest,

5

Pusins provides no information that is "[n]ot commonly known by laypersons."  Pusins therefore will impart no knowledge to the jury that represents the "study and experience of the profession." *Id*. at *8.

In Plaintiff's Response, he cites a number of cases for the proposition "that the Eighth Circuit and District Courts therein have found time and again" that testimony concerning industry standards "is helpful for juries to hear." Doc. 118, p. 8. However, an examination of the cases cited by Plaintiff reveals that the expert testimony permitted in those cases dealt with matters of specialized knowledge that the average lay juror would not possess. See *Faria v. McCarrick*, 2019 U.S. Dist. LEXIS 164821 at *50-*52 (E.D. Mo. Sept. 26, 2019) (permitting expert testimony by a retired police officer regarding the investigatory methods employed by police defendants who investigated murder in which victim was stabbed more than 50 times); *Swink*, 2018 WL 2762549 at *3 (permitting expert testimony regarding police practices for apprehending a fleeing suspect in case in which officers assisting in a vehicular pursuit mistook Plaintiff for the fleeing suspect); *Gerling v. City of Hermann*, No. 4:17-CV-02702 JAR, 2019 WL 7048972, *5 (E.D. Mo. Dec. 20, 2019) (permitting testimony concerning police policies and procedures in the field of law enforcement for using force in lawsuit involving the use of a taser against plaintiff); *Zorich v. St. Louis County*, Case No. 4:17-CV-1522 PLC, 2018 WL 3995689 (E.D. Mo. Aug. 21, 2018) (permitting expert testimony on best practices for canine interactions because tactics and methods for evaluating and capturing a dog are matters of specialized knowledge rather than common knowledge); *Peters v. Woodbury County, Iowa*, 979 F. Supp. 2d 901, 925 (N.D. Iowa 2013)(permitting expert to testify about a use of force technique in the context of recognized standards and practices for jail administration). None of these cases

involved expert testimony on police practices and procedures with regard to arrests for peace disturbance violations.

In contrast to the cases cited above, here, Pusins has no scientific, technical or specialized knowledge that will help the jury understand the evidence or determine a fact at issue. FRE 702. Plaintiff argues, without explanation, that "police practices regarding the arrest of people engaged in First Amendment activity or mass arrests," are akin to "principles surrounding use of force by an officer and tactics for evaluating and capturing dogs," *id*. at 9, but Plaintiff never has identified what particular police practices regarding arrests are relevant in this case or how testimony about these unidentified practices will assist the jury with its fact-finding role. Plaintiff therefore fails to carry his burden to show how Pusins' testimony will be helpful to jurors.

To the extent that Pusins seeks to provide the opinion that there were "options available to Defendants other than arresting Mr. Brown," Doc. 118, p. 7, this Court should find that expert testimony is not needed to provide the observation that one alternative to arresting Plaintiff would have been *not arresting* Plaintiff. It is axiomatic that an officer has discretion in any situation to not effect an arrest, and whether Boettigheimer's arrest of Brown was the best choice among other options is not a question to be decided in this litigation. The only issue to be resolved by the jury is whether probable cause existed for Plaintiff's arrest. Pusins' testimony concerning the existence of other "options" will not assist the trier of fact because that testimony does not bear on the existence of probable cause and will serve only to confuse and distract the jury. There are no facts at issue for which Pusins' testimony concerning "police practices regarding arrests" will help the jury resolve.

Further, testimony concerning "mass arrests" is not relevant to any issue to be decided in this litigation. Boettigheimer did not arrest Plaintiff in the context of a mass arrest. Although

there certainly were other individuals arrested during the Trump rally, including a large group

who had interlocked their arms forming a human chain, Plaintiff was not among that group. Ex.

F to Defendants' Memorandum in Support of their Motion for Summary Judgment, p. 48.

Accordingly, Pusins' testimony concerning mass arrests has no bearing whatsoever on Plaintiff's

arrest. Once again, the existence of probable cause for Plaintiff's arrest, and Plaintiff's arrest

alone, is the only issue to be decided by the jury. For this additional reason, testimony

concerning police procedures for effecting mass arrests will only confuse the jury.

Finally, Pusins' testimony concerning "law enforcement standards regarding report-

writing and documentation" are irrelevant to the issues to be decided by the jury. The content of

Plaintiff's incident report simply has no bearing on any legal or factual issue. The jury will not

be asked to decide whether the incident report documenting Plaintiff's arrest was thorough or

even accurate. As noted in Defendants' Memorandum, "there is no constitutional right to an

accurate police report." *A.J. v. Tanksley*, 94 F. Supp. 3d 1061, 1071 (E.D. Mo. Mar. 3,

2015)(citations omitted). Moreover, the record establishes that Plaintiff had already been arrested

and released long prior to the time the incident report was written and finalized. Thus, it cannot

be argued that the content of the report caused his arrest.

To the extent that Plaintiff claims that the content of the incident report is relevant to his

"malicious prosecution" claim in Count II, "a § 1983 plaintiff's claim that he was arrested or

prosecuted without probable cause, even if labeled a claim of malicious prosecution, 'must be

judged' under the Fourth Amendment." *Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2016).

Thus, the question still comes down to whether probable cause existed for his arrest. See

*Harmon v. St. Louis County*, 2009 U.S. Dist. LEXIS 27726 at *9 (E.D. Mo. Mar. 31, 2009)

(dismissing Fourth Amendment claim where plaintiff failed to offer "any explanation or caselaw

as to how the preparation and/or filing a false police report, in and of itself, violates any

identified Fourth Amendment rights.")

Accordingly, this Court should find that Pusins' testimony is inadmissible pursuant to

FRE 702 because it will not help the trier of fact to understand the evidence or to determine a

fact in issue.

> **2. Pusins' opinions are unreliable and lack foundation because he was unfamiliar with the video recording depicting the events leading to Plaintiff's arrest.**

In their Memorandum in Support of their Motion to Strike Pusins, Defendants cited

deposition testimony by Pusins that demonstrated that Pusins was unfamiliar with the portion of

the video depicting Plaintiff's conduct immediately prior to his arrest. Doc. 112-1, pp. 10-12.

This testimony established that Pusins was unsure who Plaintiff actually was in that segment of

video, and Pusins even misidentified Plaintiff as another individual. Ex. D, p. 47.

In his Response, Plaintiff argues that Defendants have unfairly taken the position that

Pusins was unfamiliar with the video recording because Pusins was shown only a portion, rather

than the entire video recording, during the deposition. Plaintiff claims that Pusins' inability to

identify the Plaintiff "goes to the weight and credibility of his testimony" rather than the

admissibility of his testimony." Doc. 118, p. 12. Plaintiff argues that Defendants have

mischaracterized Pusins' deposition testimony by focusing on Pusins' "decontextualized

response" to questions concerning the events shown in "only a fraction of a video he reviewed."

Doc. 118, p. 10.

In reality, Pusins was asked questions about the video depicted in Exhibit A after he was

permitted to review nearly the entirety of the portion of the video depicting the moments leading

to Plaintiff's arrest. Exhibit A contains, in total, only one minute and 30 seconds of original content.[1] Plaintiffs therefore fail to acknowledge that the 28-second segment of the video shown to Pusins is *substantially the entire portion* of the video depicting Plaintiff's conduct immediately before he is escorted out of the auditorium by Boettigheimer and Korte. Notably, Plaintiff is not visible in the video from approximately the 00:31 second to the 00:47 second mark when the camera pans to Candidate Trump. Then, once the camera pans back to the Plaintiff at the 00:47 second mark, the officers are already already in the process of leading him down the aisle and out of the auditorium. Therefore, the first 28-seconds of the video recording constitute the portion relevant to the issue of whether probable cause existed for Plaintiff's arrest, but Pusins was unable to identify the Plaintiff in that relevant portion. The fact that Pusins might have been more familiar with later portions of the video does not excuse or justify his unfamiliarity with the segment that shows the events giving rise to the arrest.

Plaintiff's argument that Pusin's inability to identify Plaintiff should be excused because "the short segment of video counsel was permitting [Pusins] to watch only showed the backs of the relevant individuals in the audience" is unavailing. Doc. 118, p. 10. A review of Exhibit A, particularly between the 00:18 and 00:20 second marks, shows that the video clearly depicts Plaintiff, who is wearing a black cap and vest, turned toward and engaged in a confrontation with another audience member.

In order for Pusins to be competent to provide testimony in this matter, his testimony must be based on "sufficient facts or data." FRE 702. The Court, acting as gatekeeper, must

---

[1] The video recording depicted in Defendants' Exhibit A is a total of 2 minutes and 44 seconds. However, at the one minute and 30 second mark Exhibit A begins to replay previous portions of the video. Thus, the total length of the video containing original content is one minute and 30 seconds.

therefore determine at the outset whether Pusins' testimony "rests on a reliable foundation." *Daubert v. Merrell Dow Pharms*., Inc., 509 U.S. 579, 597 (1993). Here, it does not. It simply cannot be said that Pusins' opinions surrounding the circumstances of Plaintiff's arrest are based on a reliable foundation where he has demonstrated that he has not sufficiently familiarized himself with the relevant portion of the most crucial piece of evidence in the case – the video recording depicting the events that Boettigheimer observed immediately prior to Plaintiff's arrest.

Accordingly, this Court should find that Pusins is barred, pursuant to Rule 702, from providing any opinion in this matter because his opinions about Plaintiff's arrest lack foundation.

## CONCLUSION

Pusins' testimony will not assist the jury to understand the evidence or to determine a fact in issue, and his opinions lack a reliable foundation. Accordingly, FRE 702 bars the admission of his testimony.

Respectfully submitted,

**MICHAEL A. GARVIN,
CITY COUNSELOR**

By: /s/ Erin K. McGowan
    Erin K. McGowan #64020MO
    1200 Market Street, Room 314
    City Hall
    St. Louis, Mo 63103
    (314) 622-3361
    (314) 622-4956 fax
    McGowanE@stlouis-mo.gov
    *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on **March 8, 2021** the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system.

/s/ Erin K. McGowan